IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:13cr70 |
| v. | ) | |
| | ) | 18 U.S.C. § 371 |
| DAVID LUX, | ) | (Conspiracy to Commit Major Fraud |
| Defendant. | ) | against the United States) |

**Criminal Information**

The United States charges that:

**Count 1**
**(Conspiracy to Commit Major Fraud against the United States)**

1. From in or about April 2008 through in or about February 2012, in the Eastern District of Virginia and elsewhere, the defendant, David Lux, did knowingly and intentionally combine, conspire, confederate, and agree with K.H., D.H., D.S., J.R., and others known and unknown to commit major fraud against the United States, that is: to execute and cause to be executed a scheme and artifice to defraud the United States and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, all in relation to a procurement for services valued at more than $1,000,000, in violation of Title 18, United States Code, Section 1031.

*Purpose, Manner, and Means of the Conspiracy*

2. The purpose of the conspiracy was to obtain U.S. government contracts based on SBA-administered contracting preferences by creating a "shell" entity (Company B) with a figurehead owner (co-conspirator D.H.), while impermissibly controlling that entity and concealing that control from the Small Business Administration ("SBA"). In so doing, K.H.,

1

K.H.'s company (Company A), Lux, and others would benefit improperly from the payments received in relation to those contracts, the volume of business performed pursuant to those contracts, and the expected future gain from performing those contracts.

3. The manner and means by which Lux and others would and did carry out the conspiracy included, but were not limited to, the following:

  a. falsely representing to the SBA that Company B was eligible for SBA-administered contracting preferences, including the "8(a) Business Development Program" for disadvantaged small business owners and those provided to small businesses more generally;

  b. falsely representing to the SBA that neither Company A (which was not eligible for the SBA contracting preferences Company B obtained), nor any employee or management member thereof, exercised control over Company B;

  c. fraudulently causing Company B to receive 8(a) and small business contract awards to which Company B was not entitled, including but not limited to (i) prime contract number HSCG23-08-D-MMZ339 ("Contract Z339") with the U.S. Coast Guard ("USCG") of the U.S. Department of Homeland Security ("DHS"), a small business contract valued at $48,522,390.08; and (ii) U.S. Department of Defense ("DoD") prime contract number N00189-11-C-Z065 ("Contract Z065"), an 8(a) contract valued at $14,000,187.70.

  d. fraudulently receiving in excess of $30,000,000 in payments on those contracts based on those SBA contracting preferences to which Company

B was not actually entitled, including (i) 18,108,805.00 in payments on Contract Z339, and (ii) $774,342.46 in payments on Contract Z065.

### *Overt Acts*

4. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Eastern District Virginia and elsewhere:

   a. In or about April 2008, in response to an anticipated site visit from SBA auditors who were concerned about Company B's relationship with Company A, K.H. directed D.S., J.R., Lux, and others to move all Company B files into a small conference room within Company A's office for the purpose of making Company B appear to have its own office space, when in fact Company B did not have its own office space at that time.

   b. In or about April 2008, as part of the effort to defraud the SBA auditors, K.H. directed Lux to fabricate a sublease purporting to show that Company B was renting the space from Company A. Company A's actual lease prohibited subletting, but Lux used a $400/month "service fee" that Company B had been paying to Company A to create a fictitious agreement purporting to document such a sublease;

   c. In or about July 2008, Lux knowingly and intentionally caused to be submitted to the USCG fraudulent proposals and other required information in connection with Contract Z339, despite knowing that Company B was not eligible for that contract because Company A and its

        management (including Lux) used Company B to obtain Contract Z339 on Company A's behalf;

d.   On July 7, 2008, Lux emailed Bank of America and asked it to add Joseph Richards, purportedly Company B's "Chief of Staff," to Company B's bank account, notwithstanding Richards's employment with Company A at that time;

e.   On or about February 10, 2009, Lux emailed a certified public accountant located in Maryland to initiate that CPA's preparation of Company B's 2008 tax returns. Lux signed the email as Company B's "Chief Financial Officer" and "Account Representative";

f.   In or about September 2011, a DoD-Navy contracting official notified D.H. by email that Company B had been awarded DoD-Navy 8(a) contract Z065, worth more than $14 million. D.H. forwarded the email to J.R., who then forwarded the email to K.H., D.S., and Lux. Lux then emailed R.F., a Company A employee, and copied J.R. In that email, Lux instructed R.F. to "stay with this one" notwithstanding that the contract had been awarded to Company B and R.F. was a Company A employee. Lux further told R.F. that "[t]he contract used to belong to [Company A] but now has been awarded to [Company B]. [Company A] will have a subcontract with [Company B] to do about half the labor etc"; and

g.   In or about November 2011, Lux caused Company B's response to a supplemental questionnaire to be submitted to the SBA. Based on his involvement in the preparation of the response, Lux knew that Company

B's submission included material false statements and misrepresentations about Company B's actual management and control, including the concealment of K.H.'s ultimate control over Company B and the concealment of impermissible affiliation between Company A and Company B.

(All in violation of Title 18, United States Code, Section 371.)

Neil H. MacBride
United States Attorney

Jeffrey H. Knox
Chief, Fraud Section
Criminal Division, U.S. Department of Justice

By: *[signatures]*
Chad I. Golder
Ryan S. Faulconer
Assistant U.S. Attorneys